### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRITTA NOSBAUM, individually and as Trustee for the FINN G. NOSBAUM TRUST and the LILLIAN NOSBAUM TRUST, | ) ) ) | |
| | ) | |
| Petitioner, | ) | No. 17 C 6202 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| J.P. MORGAN SECURITIES LLC, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

On July 26, 2017, Petitioner Britta Nosbaum, individually and as Trustee for the Finn G. Nosbaum Trust and the Lillian Nosbaum Trust, filed a petition to vacate a Financial Industry Regulatory Authority ("FINRA") arbitration award in the Circuit Court of Cook County, Illinois. (Dkts. 1-1, 9). On August 25, 2017, Respondent J.P. Morgan Securities LLC ("JPMS") removed the action and it later filed a cross-petition to confirm the arbitration award and for final judgment. (Dkts. 1, 21). For the reasons set forth below, the Court denies Nosbaum's petition to vacate (Dkt. 1-1) and grants JPMS's cross-petition (Dkt. 21) to confirm the arbitration award. The Court hereby converts the arbitration award into a final judgment in favor of JPMS and, pursuant to FINRA Rule 2080, directss the Central Registration Depository ("CRD") system to expunge the information related to FINRA Arbitration No. 15-02672 for broker Christopher D. Nield.

### BACKGROUND

#### A. Facts

At some point before 2012, Nosbaum received stock in her uncle's business, VirnetX Holding Corporation ("VHC"). VHC's business is patent-enforcement and, accordingly, its

stock is volatile.  With this stock, Nosbaum opened a margin account for herself and created trust accounts for her two children with LPL Financial ("LPL").  In 2012, Nosbaum met with Christopher Nield, then a J.P. Morgan Executive Director, to discuss moving her assets.  At the time, Nosbaum owned 84,891 shares of VHC, and each trust owned 47,114 shares; this stock predominated the three account portfolios.  *See* (Dkt. 1-1) at ¶¶ 1–2.  At their meeting, Nield explained that Nosbaum would qualify as a "private client," and therefore she would be provided with financial advice, including supervision of her portfolio, regular contact regarding her VHC stock, and investment advice.  According to Nosbaum, at this meeting she described her and her husband's limited income and conveyed her desire to diversify her portfolio and to receive advice on how much stock to sell and when.  *Id.* at ¶¶ 3, 5.

The new accounts were created in January 2013, and the assets were moved from LPL to JPMS in February.  Notably, Nosbaum requested financial planning advice with regard to the assets in the three accounts, but she ultimately chose when to sell and how much to sell—that is, the accounts were non-managed.  *See, e.g.*, (Dkt. 9) at 83–85 (J.P. Morgan Personal Account Application).  Also in February, Nosbaum signed a Promissory Note and Collateral Agreement, providing her with a 1.25% line of credit[1] for $1,000,000 using her VHC stock as collateral, which Nosbaum alleges Nield recommended.  The documents indicated that the collateral value of her stock would be $0 if at any time the trading price or bid price of the stock dropped below $18 per share.  Nosbaum alleges that Nield recommended the line of credit, which he described to her as "free money."  *See* (Dkt. 1-1) at ¶¶ 6–9.  As relevant, Nosbaum used the line of credit in part to pay off an outstanding loan she had with her prior margin account with LPL.

---

[1] Throughout this opinion, this $1,000,000 line of credit is referred to as both the "line of credit" and the "loan."

Throughout 2013 and 2014, the VHC stock rapidly lost value. Nosbaum claims that instead of advising that she diversify her holdings at any point, JPMS employees repeatedly advised her to lower the price floor of her collateral line of credit (and thereby reduce the amount of her line of credit) instead. (Dkt. 1-1) at ¶¶ 10–14. Eventually, Nosbaum sold all of the VHC stock in late September 2014 for between $5.36 and $4.97 per share. *Id.* at ¶ 15. The losses in Nosbaum's three JPMS accounts totaled $5,007,664.

## B. Procedural History

A little more than one year later, Nosbaum filed a seven-count arbitration claim against JPMS with FINRA, *In the Matter of the Arbitration Between Britta Nosbaum, Individually and on behalf of the Finn G. Nosbaum Trust and the Lillian R. Nosbaum Trust vs. J.P. Morgan Securities, LLC* (FINRA Arbitration No. 15-02672), alleging that it was responsible for investment losses totaling $6,638,553—the amount Nosbaum believed her accounts would have been worth if they had been "properly allocated with a 60/40 portfolio." *Id.* at ¶¶ 16–17. Specifically, Nosbaum brought claims for negligence; violation of FINRA Rule 3110—Failure to Supervise; breach of fiduciary duty; violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*; violation of FINRA Rule 2111—Unsuitability; breach of contract; and fraud. *See* (Dkt. 9) at 1–6 (Statement of Claim). The core underlying complaint in the Statement of Claim regards the alleged recommendation by JPMS that Nosbaum "hold the VHC stock instead of diversifying." *See, e.g.*, *id.* at ¶¶ 21, 42, 49. JPMS filed a 25-page "Answer" and affirmative defenses on January 13, 2016, which was in large part a legal brief in opposition to Nosbaum's Statement of Claim. *See* (Dkt. 9) at 58–82 (Answer). As a result, Nosbaum moved for leave to file a response to the legal arguments contained in the Answer; JPMS opposed the motion. After pre-hearing conferences with the arbitration panel on April 8

and 11, 2016, Nosbaum's motion was denied. *See* (Dkt. 9) at 87 (April 11, 2016 Order). Nosbaum later filed a 17-page Hearing Brief, which contained legal arguments in response to those set forth by JPMS in its Answer, on March 7, 2017. (Dkt. 1-1) at 7–8; *see also* (Dkt. 9) at 88–104 (Claimants' Hearing Brief).

Eight days of hearing (broken into sixteen separate hearing sessions) ensued before a three-member panel of arbitrators in Chicago, Illinois in March and April 2017, and the parties appeared through counsel and presented witnesses, experts, and documentary evidence. As relevant here, when Nosbaum began to introduce evidence regarding the line of credit, JMPS objected, arguing that arbitration did not encompass the line of credit, which was issued by J.P. Morgan Chase Bank, N.A. (the "Bank"), and the Bank was not a party to the suit or subject to FINRA jurisdiction. The panel heard argument regarding the line-of-credit evidence and ultimately allowed it to be admitted "for the limited purposes of substituting [Nosbaum's] position from LPL to JP Morgan," that is, testimony and evidence that Nosbaum used the Bank credit to pay off the margin-loan debt she had incurred at LPL. *See* (Dkt. 23), Ex. A (March 27, 2017 Hearing Tr.) at 103–20. JPMS later withdrew its objection to the admission of the promissory note and collateral agreement into evidence, and they were admitted. *Id.* at 129. As the hearing proceeded, Nosbaum's expert Jeffrey Schaff gave opinions that involved the line of credit and Nosbaum's "funding" or "liquidity" "distribution needs," and the panel again limited their consideration of the testimony on that topic. *Id.*, Ex. D (March 9, 2017 Hearing Tr.) at 75–92. Nosbaum later moved for reconsideration of the panel's evidentiary ruling, arguing that although she was not alleging violations of banking laws or regulations, the loan evidence was relevant to the case "because it relates to the solicitation and the activity in [Nosbaum's] accounts." After hearing argument, the panel stated:

> [W]e duly noted your motion for reconsideration and at this point have denied it. As you understand, we've heard a lot of—there's been a lot of leeway here in what we're considering in this case in regard to the numbers and the processes. And the statement of claim as parties have conceded is—is not a claim about the loan. We're going to consider all the facts and circumstances and evidence that comes in, and you're more than welcome to put your arguments into the closing argument.

*Id.*, Ex. E (March 30, 2017 Hearing Tr.) at 4–9, 14. After Nosbaum rested her case, JPMS moved for a directed verdict and the parties offered lengthy arguments. The panel ultimately granted the motion as to five of Nosbaum's seven counts, allowing her negligence and suitability claims to proceed. *See* (Dkt. 24), Ex. H (April 11, 2017 Hearing Tr.) at 17–55; *see also* (Dkt. 9) at 9–10 (Award). The arbitration continued for two more days, concluding with fulsome closing arguments by both sides. (Dkt. 24), Ex. I (April 12, 2017 Hearing Tr.) at 79–151.

On May 4, 2017, the panel issued a written ruling in favor of JPMS (the "Award"). The Award contains two parts:

(1)   "Claimant's claims are denied in their entirety," and

(2)   "The Panel recommends the expungement of all references to the above-captioned arbitration from registration records maintained by the [Central Registration Depository] for non-party Christopher D. Nield (CRD# 5197534), with the understanding that, pursuant to Notice to Members 04-16, non-party Christopher D. Nield must obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive."

(Dkt. 9) at 10 (Award, FINRA Office of Dispute Resolution). On account of the expungement, pursuant to FINRA Code of Arbitration Procedure Rule 12805 and FINRA Rule 2080, the Award provided the following affirmative finding of fact: "The claim, allegation, or information is factually impossible or clearly erroneous." This is supported by a further recitation of reasons, including that "Mr. Nield always made suitable and appropriate investment recommendations to Ms. Nosbaum, both individually and as trustee for the separate trusts of her two children" and that "[n]either Mr. Nield nor anyone at JP Morgan Securities ever recommended maintaining or

5

holding a concentrated position in this security." *Id.* at 10–12. As relevant, the Award contains an acknowledgement by the arbitrators "that they have each read the pleadings and other materials filed by the parties." *Id.* at 9.

Nosbaum petitioned an Illinois state court to vacate the Award, and JPMS removed the action to this Court, noting that Nosbaum and the two trusts for which she serves as trustee are all citizens of Oregon, while JPMS is a limited liability company whose sole member (J.P. Morgan Broker-Dealer Holdings, Inc.) is a Delaware corporation with its principal place of business in New York. *See* (Dkt. 1) at ¶¶ 7–10. Seeing that the underlying arbitration seeks to recover more than $6 million in investment losses, the requirements for diversity jurisdiction are satisfied. *See* 28 U.S.C. § 1332(a)(1).

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts."[2] *Jain v. de Méré*, 51 F.3d 686, 688 (7th Cir. 1995). Confirmation of arbitration awards is "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691–92 (7th Cir. 2004) (citation omitted). In other words, this Court's review of an arbitration award is "extremely limited." *See Yasuda Fire & Marine Ins. Co. of Europe, Ltd v. Cont'l Cas. Co.*, 37

---

[2] Nosbaum brought her petition under the Illinois Uniform Arbitration Act ("IUAA"), 710 ILCS 5/1 *et seq. See* (Dkt. 1-1). Nosbaum's brief in support of her petition and in opposition to JPMS's petition, however, applies the FAA and notes that it "contains similar language" to the IUAA. *See* (Dkt. 26) at 1, 7–8. Although a federal court sitting in diversity would normally be bound by state law under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts must apply the provisions of the FAA in a diversity case where no federal question is otherwise involved. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967). In any event, the grounds on which Nosbaum relies for vacatur—arbitrator misconduct in refusing to hear evidence of the loan and evident partiality by an arbitrator—are the same under both the FAA and the IUAA. *See Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) ("The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same.") (quoting *Gillispie v. Vill. of Franklin Park*, 405 F.Supp.2d 904, 909 (N.D. Ill. 2005)).

F.3d 345, 349 (7th Cir. 1994); *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the [FAA], but they are not."). A court may not interfere with an arbitrator's findings of fact merely because it disagrees with them, otherwise the purpose of arbitration proceedings as speedy and cost-effective dispute resolution options would be undermined. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (collective bargaining agreement context); *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996) ("Thinly veiled attempts to obtain appellate review of an arbitrator's decision . . . are not permitted under the FAA. Factual or legal errors by arbitrators—even clear or gross errors—do not authorize courts to annul awards.") (internal citations and quotations omitted).

Courts will only disrupt an arbitration award if the arbitrator "effectively dispenses his own brand of industrial justice because there is no possible interpretive route to the award," but they will not disrupt an award even when "an arbitrator committed serious error or the decision is incorrect or even whacky." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025–26 (7th Cir. 2013) (citations and quotations omitted); *see also Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (a court may vacate the arbitrator's decision "only in very unusual circumstances"); *Flexible Mfg.*, 86 F.3d at 100 ("The fact that an arbitrator makes a mistake, by erroneously rejecting a valid, or even a dispositive legal defense, does not provide grounds for vacating an award unless the arbitrator deliberately disregarded what she knew to be the law."). "Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Halim*, 516 F.3d at 563.

Instead, the grounds for vacatur focus on "egregious departures from the parties' agreed-upon arbitration." *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). Specifically, the FAA permits a court to vacate an arbitration award in four narrow instances:

(1)     where the award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).

## DISCUSSION

### A.     Nosbaum's Petition to Vacate the Arbitration Award

Nosbaum argues for vacatur on the second and third grounds and contends that the arbitrators (1) engaged in misconduct when they deprived her of the opportunity to present in full material relevant evidence pertaining to the loan, and (2) displayed partiality when they prevented her from timely filing a response to the lengthy legal arguments contained in JPMS's answer. *See* (Dkt. 1-1) at 5–8. A petitioner seeking to vacate an arbitration award must clear a "high hurdle." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010); *see e.g. Simas v. Balcer*, 2001 WL 62576, *2 (N.D. Ill. Jan. 25, 2001) ("The petitioner has the burden of demonstrating the existence of a valid ground for vacating the [arbitration] award."); *see also Metter v. Wachovia Sec., LLC*, 2008 WL 4395086, *2 (N.D. Ill. Sept. 23, 2008) ("The burden of proving evident partiality rests with the party asserting the claim.").

### 1.   Misconduct in Refusing to Hear Loan Evidence

First, Nosbaum argues that the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy" in violation of § 10(a)(3) when they limited their consideration of the line of credit evidence to position substitution.  Again, § 10(a)(3) provides that a judge may set aside an arbitrator's award "where the arbitrators were guilty of misconduct in . . . refusing to hear evidence pertinent and material to the controversy."  This statute provides for judicial intervention when an arbitrator commits "misbehavior," but an error differs in kind from misbehavior; the statute does not provide for substantive review of an arbitrator's decisions. *Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir. 2017).

An arbitrator's refusal to receive relevant evidence at the hearing, standing alone, does not warrant vacating an arbitration award.  *See Hurn v. Macy's, Inc.*, 2017 WL 6539288, at *3 (C.D. Ill. Sept. 5, 2017), *aff'd*, 728 F. App'x 598 (7th Cir. 2018); *see also Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 280 (7th Cir. 1992) ("Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award.") (quoting *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985)).  Rather, the arbitrators' failure to consider pertinent evidence must have deprived the Nosbaum of a "fundamentally fair" hearing.  *Mical v. Glick*, 581 F. App'x 568, 570 (7th Cir. 2014); *see, e.g., Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 2004 WL 442640, at *4 (N.D. Ill. Mar. 8, 2004) (§ 10(a)(3) requires simply that the panel "provide a fundamentally fair hearing"), *aff'd*, 103 F. App'x 39 (7th Cir. 2004).  The unfair hearing standard "typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue." *Mical*, 581 F. App'x at 570. A hearing is fundamentally fair if it "meets the minimal requirements of fairness—adequate

notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. Int'l Amateur Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001).

Using this standard, Nosbaum has failed to carry her burden of showing that her hearing was fundamentally unfair. Nosbaum's primary complaint is that the arbitrators refused to consider *all* of the evidence she sought to present in support of her unsuitability claim and refused to consider it for *all* of the reasons she wanted it to be considered. But this is not the standard for vacatur. In particular, Nosbaum complains that her own testimony about the loan and the testimony of one of her experts (Jeffrey Schaff) were cut off by JPMS's objections. She further complains that the arbitrators' ultimate ruling that testimonial, expert, and documentary evidence concerning the collateral Bank line of credit would be admitted "for the limited purpose of substituting [Nosbaum's] position from LPL to JP Morgan" was improper because that same evidence was relevant and central to her claim that JMPS's recommendations for her accounts were unreasonable. (Dkt. 1-1) at 6; (Dkt. 26) at 3–7.

However, the arbitrators reached their decision about the limited purpose for which to consider the line-of-credit evidence after hearing lengthy arguments from the parties, which involved overarching issues of admissibility on account of FINRA's jurisdictional limitations and whether Nosbaum's Statement of Claim encompassed a claim about the loan. *See* (Dkt. 23), Ex. A at 103–20; *id.*, Ex. E at 4–9, 14. After rendering their evidentiary ruling, the arbitrators indulged Nosbaum by fully entertaining and considering her motion for reconsideration, which they again denied, finding that the case did not include a claim about the loan. And despite the ruling, the arbitrators heard and saw voluminous evidence and argument concerning the line of credit. For one, Nosbaum included the loan in the arguments contained in her Hearing Brief, she discussed the loan in her opening statement, the actual loan documents were admitted into

10

evidence, Nosbaum was permitted to testify about the loan, Schaff was permitted to offer certain expert testimony concerning the loan, and Nosbaum included argument regarding the loan in her closing argument.   Looking beyond the discrete issue of the loan evidence, Nosbaum presented—and has not asserted any argument that she was impeded in presenting—other evidence and argument to support her claim that JPMS's recommendations for her accounts were unsuitable, namely evidence concerning the alleged recommendations that she maintain high concentrations of a single stock in her accounts.   The record therefore amply demonstrates that the arbitrators did not refuse to receive or consider the sole evidence on a pivotal issue, that is, Nosbaum's unsuitability claim.   To the contrary, in addition to the unobjectionable evidence presented in support of her unsuitability claim, with regard to the loan evidence the chair of the arbitration panel told the parties when ruling on Nosbaum's motion for reconsideration:  "We're going to consider all the facts and circumstances and evidence that comes in, and you're more than welcome to put your arguments into the closing argument."  (Dkt. 23), Ex. E at 9–10.

Therefore, although the arbitrators limited their consideration of the loan evidence, the Court cannot say that their handling of that evidence rendered the arbitration hearing fundamentally unfair.  *See, e.g., Azroui v. E\*TRADE Sec., LLC*, 2012 WL 12903798, at \*2 (N.D. Ill. May 4, 2012), *aff'd*, 499 F. App'x 606 (7th Cir. 2013) (a plaintiff's complaints that the arbitration panel impeded his ability to ask questions did not implicate the hearing's fundamental fairness).  The arbitrators' based their evidentiary rulings on this point on their evaluation of the Statement of Claim and their analysis of FINRA jurisdiction.  *See, e.g., Steiner v. Glenn*, 2002 WL 31133197, at \*4 (N.D. Ill. Sept. 25, 2002) ("Reviewing courts always give considerable deference to the trier of fact on issues of relevance and admissibility, and deference to the arbitrator is arguably even greater.").  Even if the arbitrators' determination on either ground was

in error, again error differs from misbehavior. *Hyatt Franchising, L.L.C.*, 876 F.3d at 902. Having found no misbehavior, the Court will not engage in substantive review of the arbitrators' decisions. *Id.*

The cases cited by Nosbaum are not precedential, and even if they were, they are inapposite. First, in *Johnson v. Baumgardt*, 216 Ill. App. 3d 550 (2d Dist. 1991) (cited in (Dkt. 1-1) at 6–7), the parties had contracted for the sale of a die and tool company, and in doing so, they agreed to arbitrate disputes regarding interpretation of the contract or any other matter related to the purchase or its terms. *Johnson*, 216 Ill. App. 3d at 552. A dispute subsequently arose concerning over the defendants' nonpayment of certain sums due under the contract and the parties participated in an arbitration hearing. In reaching a decision for the plaintiff, the arbitrators agreed to exclude evidence and testimony related to the "matters and defenses" raised in a letter from the defendants' attorney as not subject to arbitration. As relevant, the "matters and defenses" basically concerned post-closing disputes and a resultant valuation discrepancy that were the basis for the earlier mentioned payment stoppage by the defendants. In their court proceedings, the parties disputed whether the post-closing issues were arbitrable in the first instance. The Illinois Appellate Court found that the parties' contract contained a "generic" arbitration clause and the payment dispute submitted to the arbitrators—which was the defendants' cessation of payments on account of the post-closing irregularities—was covered in total by the arbitration clause. *Id.* at 558–59. The default and its bases were part and parcel of the same claim. Accordingly, the appellate court found that the arbitrators could not separate and arbitrate evidence regarding the default while at the same time holding the post-closing disputes for resolution at another time in another forum. For this reason, the appellate court

concluded that the arbitrators refused to hear evidence material to the controversy and vacated the arbitration award. *Id.* at 560.

Giving Nosbaum the benefit of the doubt, the disputed evidentiary ruling in her case does have overtones of an arbitrability determination, but on this point Nosbaum's counsel conceded at the hearing that he was not alleging violations of banking laws or regulations with regard to the loan, so that the Bank would need to be named; he simply wanted the loan evidence to be considered for his unsuitability arguments. Although the arbitrators did not grant him the full scope of consideration that he desired, they still allowed loan evidence to be presented and considered at least in part. Therefore, the evidentiary ruling in Nosbaum's case does not even come close to the piecemeal claim carving that occurred in *Johnson*.

*Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506 v. E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982) (cited in (Dkt. 26) at 6), presents an even more disparate factual scenario. There, an arbitrator was appointed to arbitrate a dispute between a company and a union. At one hearing, the parties' disagreements devolved into extensive, heated arguments and the arbitrator resigned in a fit of expletives stating that he was "prejudiced." This happened before the arbitrator had conducted a full hearing on the questions of (1) arbitrability or (2) the grievances at issue. Yet, the arbitrator later issued a decision that none of the disputes were arbitrable under the collective bargaining agreement. *Teamsters*, 551 F. Supp. at 575. On these facts, the court found that the union had not had the opportunity to complete its presentation of proof either regarding the arbitrability issue or on the merits of the grievances, and thus the arbitration award was vacated. *Id.* at 578. No similar procedural anomalies occurred in Nosbaum's case, and the record reflects that she was given the opportunity to present her case in full over many days with many witnesses and exhibits, even

despite the evidentiary ruling on the loan with which she disagrees. Her case is simply not analogous to *Teamsters*.

Finally, *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280 (S.D.N.Y. 2007) (cited in (Dkt. 26) at 7), provides even less support for Nosbaum's position. There, the district court found that, after a full hearing on the merits, the arbitrator's refusal to accept the petitioner's post-hearing brief did not constitute improper misconduct under § 10(a)(3). In reaching this conclusion, the court noted that the petitioner's argument boiled down to a challenge to the evidence the arbitrator weighed and credited in coming to his conclusion, but that "an arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant," and "an arbitration award cannot be overturned solely on the ground of manifest disregard of evidence." *Fairchild Corp.*, 510 F. Supp. 2d at 289. The court stated the misconduct standard to be where "an arbitrator, to the prejudice of one of the parties, rejects consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute, and the party would otherwise be deprived of sufficient opportunity to present proof of a claim or defense." *Id.* at 287. The court held that the arbitrator's decision did not rise to the level of misconduct. Under the standards set forth in *Fairchild*, the Court reaches the same conclusion here. Her challenge is to the evidence the arbitrators weighed in determining the Award, but it cannot rise to the level of misconduct because she was not denied the opportunity to present proof of her unsuitability claim.

When parties agree to arbitrate, they opt out of the court system, and when one of those parties challenges the resulting arbitration award, she can only do so if the arbitrators "violated the agreement to arbitrate" not on the ground that the arbitrators made a mistake. *Wise*, 450 F.3d at 269. Here, although the arbitrators made an evidentiary ruling that limited the consideration

of evidence of Nosbaum's Bank line of credit, they still received significant evidence and argument regarding the line of credit and on Nosbaum's claim of overall unsuitability, as detailed above. Thus, the record amply demonstrates that the arbitrators did not "refus[e] to hear evidence pertinent and material to the controversy," as described in § 10(a)(3), and the Court will not vacate the Award on this ground.

### 2. Evident Partiality Through Adverse Ruling

Second, Nosbaum argues that the panel's denial of her motion for leave to respond to the legal arguments contained in JPMS's Answer required her to put her response arguments in her arbitration brief—filed nearly a year later—and therefore constituted "evident partiality" on the part of the panel in favor of JPMS such that the award must be vacated. (Dkt. 1-1) at 7–8. But Nosbaum's arguments fail to meet her high burden of showing bias. For one thing, "an adverse ruling alone is not 'direct, definite, and demonstrable bias' sufficient to constitute 'evident partiality.'" *Hurn v. Macy's, Inc.*, 728 F. App'x 598 (7th Cir. 2018) (citing 9 U.S.C. § 10(a)(2); *Harter v. Iowa Grain Co.*, 220 F.3d 544, 556–57 (7th Cir. 2000)). In other words, the mere appearance of bias (for example, inferred from an adverse ruling) is not a valid ground for vacatur. *Azroui*, 499 F. App'x at 607; *accord Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992).

Because the adverse ruling on her motion for leave to file a response to JPMS's answer is her only alleged evidence of bias, Nosbaum has failed to show even the appearance of bias and her argument cannot succeed. Nosbaum herself admits that she was able to respond to JPMS's legal arguments through her Hearing Brief. *See* (Dkt. 26) at 8. The Court is unwilling to find that the simple 14-month period between the Answer and the Hearing Brief evidenced the entire panel's bias in favor of JPMS, much less direct, definite, and demonstrable bias that could rise to

the level of vacating the Award—which was rendered after eight days of testimony and argument on the matter. In other words, no reasonable person would conclude (much less would *have* to conclude) that this delay in argument presentation, particularly when the entire arbitration proceedings are considered, that the arbitrators were partial to one side. *See Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007) (involving conflicts of interest) (cited in (Dkt. 26) at 8).

As a final point on this matter, Nosbaum emphasizes that, at the start of the hearing, the chair of the arbitration panel listed the parties' submissions and omitted mention of her Hearing Brief "raising the presumption that it was never read or considered by the panel." (Dkt. 1-1) at 8. But this argument is not supported by the record. To the contrary, the Award contains an explicit acknowledgement that "[t]he Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties" and that their decision was rendered "[a]fter considering the pleadings, testimony and evidence presented at the hearing." (Dkt. 9) at 9, 10.[3] Even if Nosbaum could somehow prove that none of the three arbitrators reviewed her Hearing Brief, such evidence, on its own, still would not rise to the level of evident partiality that requires

---

[3] Further, the hearing transcript reads as follows:

> CHAIRPERSON BRAHIN: Thank you. The arbitrators have read the papers that have been submitted by the parties. These papers along with the executed submission agreements will be marked and received into evidence as Arbitrator Exhibit No. 1. Just what I have here, these are the submission agreement, the statement of claim, and the answer in the amended -- I believe it was submission agreement. Any other matters? Important matters can be addressed here. Any questions?
> **MR. UNGAR: Well, we had filed a prehearing brief. I don't know if --**
> CHAIRPERSON BRAHIN: Yes. I'm sorry. I have the -- we also have the prehearing brief and the witness lists.
> **MR. UNGAR: Okay.**

(Dkt. 23), Ex. A at 9–10. Notably, Mr. Ungar represents JPMS. In its cross-petition, JPMS excerpts the same portion of the hearing transcript, but it attributes Mr. Ungar's statements to Mr. Burke, Nosbaum's counsel. Without any further explanation, the Court is not in the position where it can attribute Mr. Ungar's statements to Mr. Burke as a transcription or other error, and the Court questions why JPMS did so without highlighting the change, particularly when this formed a portion of its argument that the arbitrators were not partial. *See* (Dkt. 22) at 13–14.

vacating the Award, particularly in light of all of the evidence and argument considered before and during the eight-day hearing. *See, e.g., Lashco, Inc. v. Erickson*, 700 F. Supp. 960, 963 (N.D. Ill. 1988) (rejecting argument that collection of arbitrators' errors amounted to "partiality" toward prevailing party because "evident partiality or corruption" is defined as "'actual bias' or circumstances that are 'powerfully suggestive of bias'") (quoting *Merit Ins. v. Leatherby Ins. Co.*, 714 F.2d 673, 680–81 (7th Cir. 1983)).

**B.     JMPS's Cross-Petition to Confirm the Arbitration Award**

JPMS seeks confirmation of the Award. Within a year of the entry of an award, a party may seek to confirm it in the court so specified, and the court must do so unless the award has been vacated or modified under 9 U.S.C. § 10 or 9 U.S.C. § 11. *See* 9 U.S.C. § 9. "[I]f the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what that resolution is, [she] must confirm the award." *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650–51 (7th Cir. 2001).

In the present action, JPMS has sought confirmation of the Award within one year of its entry on May 4, 2017. The Award does not present the Court with any challenges in terms of comprehending it. With respect to the issue of the expungement of Nield's CRD registration records, JPMS has provided the requisite waiver by FINRA of its being named a party to the instant litigation in accordance with FINRA Rule 2080. (Dkt. 18-1) at 1. The waiver states that "FINRA notes that the arbitration award reflects compliance with FINRA's Code of Arbitration Procedure for Customer Disputes § 12805 or Code of Arbitration Procedure for Industry Disputes § 13805. In addition, it includes an affirmative finding that the expungement directive is based on one or more standards enumerated in FINRA Rule 2080. Specifically, . . . the claim,

allegation, or information is factually impossible or clearly erroneous." *Id.*; *see also* FINRA Rule 2080(b)(1)(A). As such, the Award is confirmed in full.

## CONCLUSION

For the reasons explained above, the Court grants JPMS's cross-petition (Dkt. 21) and confirms the Award in its entirety. Nosbaum's petition to vacate (Dkt. 1-1) is denied. The Court therefore converts the Award into a final judgment in favor of JPMS and, pursuant to FINRA Rule 2080, orders the Central Registration Depository system to expunge the information related to FINRA Arbitration No. 15-02672 for broker Christopher D. Nield. The Court will enter final judgment and close the case.

Hon. Virginia M. Kendall
United States District Judge

Date: July 30, 2018